IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA

RECEIVED
2005 MAY 18 A 9:37

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

<u>LORENZO WATKINS #209854R</u> )
Full name and prison number of )
plaintiff(s) )
)
v. ) CIVIL ACTION NO. 2:05cv462-F
) (To be supplied by the Clerk of the
) U.S. District Court)
<u>PAUL WHALEY, Director of</u> )
)
<u>Classification and</u> )
)
<u>JIM HAYES, Classification</u> )
)
<u>Supervisor</u> )
Name of person(s) who violated )
your constitutional rights. )
(List the names of all the persons) )

I.  PREVIOUS LAWSUITS

   A.  Have you begun other lawsuits in state or federal court dealing with the same or similar facts involved in this action?   Yes ( )   No (XX)

   B.  Have you begun other lawsuits in state or federal court relating to your imprisonment?   Yes ( )   No ( x )

   C.  If your answer to A or B is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline).

      1.  Parties to this previous lawsuit:
          Plaintiff(s) _____N/A_____

          Defendant(s) _____

      2.  Court (if federal court, name the district; if state court, name the county) _____N/A_____

3. Docket No. _____ N/A _____

4. Name of Judge to whom case was assigned _____ N/A _____

5. Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?
   _____ N/A _____

6. Approximate date of filing lawsuit _____ N/A _____

7. Approximate date of disposition _____ N/A _____

II. PLACE OF PRESENT CONFINEMENT Limestone Correctional Facility Dorm 9-A-19, 28779 Nick Davis Road, Harvest, AL 35749

PLACE OR INSTITUTION WHERE INCIDENT OCCURRED Central Records Division, Montgomery; Limestone Correctional Facility

III. NAME AND ADDRESS OF INDIVIDUAL(S) YOU ALLEGE VIOLATED YOUR CONSTITUTIONAL RIGHTS.

| | NAME | ADDRESS |
|---|---|---|
| 1. | Paul Whaley, Director of Classification | Central Records Division ADOC P. O. Box 301501, Montgomery, Alabama 36130-1501 |
| 2. | | |
| 3. | Jim Hayes, Classification Supervisor | LCF 28779 Nick Davis Road Harvest, Alabama 35749 |
| 4. | | |
| 5. | | |
| 6. | | |

IV. THE DATE UPON WHICH SAID VIOLATION OCCURRED _____
Began on 6-09-2004 and continuing today

V. STATE BRIEFLY THE GROUNDS ON WHICH YOU BASE YOUR ALLEGATION THAT YOUR CONSTITUTIONAL RIGHTS ARE BEING VIOLATED:

GROUND ONE: Plaintiff's Due Process and Equal Protection rights have been violated by placing him in "restricted" ("R" suffix) status

-2-

STATE BRIEFLY THE FACTS WHICH SUPPORT THIS GROUND. (State as best you can the time, place, manner, and person involved).

_____SEE ATTACHED PAGES_____
_____
_____

GROUND TWO: _____N/A_____
_____

SUPPORTING FACTS: _____
_____
_____
_____
_____

GROUND THREE: _____N/A_____
_____

SUPPORTING FACTS: _____
_____
_____
_____
_____

VI. STATE BRIEFLY EXACTLY WHAT YOU WANT THE COURT TO DO FOR YOU. MAKE NO LEGAL ARGUMENT. CITE NO CASES OR STATUTES.
   Order the Defendants to remove Plaintiff from "restricted"
   ( "R" suffix ) custody status
_____
_____

                                    *Lorenzo Watkins* (signature)
                                    Signature of plaintiff(s)

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on __5-13-05__.
              (date)
                                    *Lorenzo Watkins* (signature)
                                    Signature of plaintiff(s)

-3-

## **GROUND ONE**

Plaintiff's Due Process and Equal Protection rights have been violated by placing him in "restricted" ( "R" suffix ) status.

## FACTS

Plaintiff plead guilty to the charge of Arson I on 3-15-2000 and was sentenced to twenty-five (25) years in prison ( See Plaintiff's Exhibit "A" ) from an incident on May 31, 1999, where Plaintiff set his girlfriend, Labertha Annie Gilmer Sanders' sectional sofa on fire because she had thrown all of his clothing out of the house they shared ( See Plaintiff's Exhibit "B" ).

Plaintiff also plead guilty to the charge of Murder on 3-15-2000 and was sentenced to twenty-five (25) years in prison ( See Plaintiff's Exhibit "A" ) from an incident on September 9, 1999, where Plaintiff shot his girlfriend, Labertha Annie Gilmer Sanders while they struggled over a gun Plaintiff was carrying ( See Plaintiff's Exhibit "C" ). Plaintiff shot his girlfriend two (2) times ( See Plaintiff's Exhibit "D" ).

In August 1987, Plaintiff began dating Labertha Annie Gilmer Sanders. Plaintiff and Ms. Sanders loved each other but had a volatile and violent relationship over the years even though they lived together off and on for 12 years. Ms. Sanders shot Plaintiff in the back on July 7, 1991 ( See Plaintiff's

Exhibit "E" ) and shot Plaintiff once again on January 2, 1998 ( See Plaintiff's Exhibit "F" ). It was because Ms. Sanders had shot Plaintiff twice that he began carrying a gun when he was around her, which led to the struggle for the gun, and Ms. Sander's ultimate death. This was a Domestic case not the murder of a stranger.

When Plaintiff was transferred to prison in 2000, he was sent to the Limestone Correctional Facility to the Protective Custody Unit because of his former employement as a correctional officer. Upon his arrival at Limestone he spoke with his Classification Supervisor, Defendant Jim Hayes, who advised Plaintiff that there would be no reason Plaintiff could not go to a work camp facility in minimum-out custody once he had served enough time on his sentence and that from there Plaintifff could go to Work Release [i]f the rule changed back to permitting murder convictions at Work Release facilities.

From 2000 to 2005, Plaintiff believed he would be able to obtain minimum-out custody and go to a work camp facility. Plaintiff received a new inmate summary sheet sometime after June 6, 2004, but did not notice until January of 2005 that an "R" had been placed after his AIS Number: 209854R ( See Plaintiff's Exhibit "A" ). After several inquires, Plaintiff determined that the "R" stood for "restricted" status which means that Plaintiff cannot receive minimum-out custody or go to a work camp based upon some factor associated with his murder conviction.

According to the prison system Classification Manual, the "R" status is as follows:

Add Appendix D
Pages 101 and 102

## APPENDIX D

I.   THE FOLLOWING CATEGORIES OF OFFENDERS WILL REQUIRE THE "R" SUFFIX:

1. Inmates whose offenses ( past or present ) indicate that a sex offense did occur in the commission of an offense, but for which there was no prosecution due to plea bargain or other considerations.

2. Juvenile adjudications for any offense which would equate with any offense falling under Megan's Law. Other juvenile cases will be considered on a case by case basis.

3. Inmates with arrest(s) for a sexual offense(s) for which there is no disposition but for which we have details will be considered on a case by case basis.

4. Inmates with a single arrest for a sex offense where the disposition is shown as reduced to a non-sexual misdemeanor conviction may be considered if details reflect a sex offense was committed on a case by case basis.

5. Multiple homicides of record: This includes any offense (nomenclature immaterial ) which resulted in death. DUI homicides excluded.

6. Robbery/Homicide:  Killing in the commission of robbery or other crime or theft of victim after killing.

7. Homicide using explosives and/or illegal weapon.

8. Murder/Homicide with torture.

9. Murder/Homicide to the defenseless. This category includes crimes against children, the elderly (65 or older), or the disabled of any age. (Does not include DUI homicide). This also includes those offenses in which the victim is sleeping, incapacitated ( knocked to the ground ), or otherwise incapable of defending self.

10. Terroristic homicide

11. Murder/Homicide with mutilation

12. Drive-by murder/homicide.

13. Contract killing

14. Killing of parent(s)

15. Gang-related homicide - this includes all participants

16. Execution style homicide: Examples: Victim killed while being forcibly restrained such as hands and feet tied or being confined to a vehicle trunk, Close range gun-shot to the head ( 6 inches or less or evidence of powder burn ), etc.

17. Killing with Aggravated Circumstances/Overkill - Examples: pursuit and killing of a victim attempting to flee for his/her life, shooting or stabbing a victim multiple times ( three or more ), reloading of weapon and continuing to fire, etc.

18. Inmates convicted of stalking or crime involving stalking behavior, or felony kidnapping ( any degree ) or cases wherein

-7-

the details of the crime reflect behavior which could be construed by the Code of Alabama or constitute a kidnapping even though not convicted of such would be assigned the "R" Suffix.

19. On a case by case basis Offenders with offenses which do not involve death, but are of a reprehensible nature, the CRB may, with the approval of the Director of Classification or the Assistant Director of Classification, bar that inmate from minimum-out and/or community custody eligibility and assign the "R" Suffix on the offender's AIS number.

There is nothing in this criteria that would cause Plaintiff to be placed in restricted "R" status which prevents him from obtaining minimum-out custody and a transfer to a work camp ( a Level II facility ). Because of this, Plaintiff met with the weekly Institutional Segregation Review Board on February 3, 2005, to meet with his Classification Supervisor, Defendant Jim Hayes, to ask him why he had been placed in "R" status. Mr. Hayes advised Plaintiff that he did not know exactly why he had been placed in "R" status but that it had to be something in the Presentence Investigation Report ( Hereinafter "PSI" ) and that he should write to Defendant Paul Whaley, Director of Classification in Montgomery to ask him. Plaintiff then asked Defendant Hayes to read the PSI to him because he knew there was a copy in his institutional file, but he refused to do so. Plaintiff then wrote to Warden Mitchem that day asking for his assistance in this matter ( See Plaintiff's Exhibit "G" ).

On February 17, 2005, Plaintiff wrote a letter to Defendant

Paul Whaley, Director of Classification ( See Plaintiff's Exhibit "H" ) requesting information as to why he had been placed in "R" status. Along with this letter, Plaintiff sent Defendant Whaley a copy of the offense report concerning his Arson charge ( See Plaintiff's Exhibit "B" ) and a copy of the offense report concerning his Murder charge ( See Plaintiff's Exhibit "C" ) because he believed that since his conviction dates on the Arson and Murder charges were the same date that it appeared the charges were related or happened at the same time...when they did not...but that this was possibly why he had been mistakenly placed in "R" status.

Plaintiff went back to the Institutional Segregation Review Board on February 24, 2005, to meet with Defendant Hayes concerning this "R" status. At this meeting, Defendant Hayes asked Plaintiff if he had shot the victim three (3) times. Plaintiff explained to Defendant Hayes that the victim was shot twice. Plaintiff asked Defendant Hayes to read the PSI report to him, but he refused to do so. Later this same day, Plaintiff wrote a letter to Defendant Hayes ( See Plaintiff's Exhibit "I" ) to let him know that he had a copy of the Autopsy report ( See Plaintiff's Exhibit "D" ) which shows that the victim had been shot two (2) times ( three (3) times would require "R" status ).

On February 26, 2005, Defendant Hayes wrote to Plaintiff ( See Plaintiff's Exhibit "J" ) stating that he had checked the Classification Manual and that it was still 3 shots...not 2 that required "R" status and that he had written to Montgomery to find out why Plaintiff had been placed in "R" status.

On March 1, 2005, Defendant Hayes wrote a memo to Plaintiff ( See Plaintiff's Exhibit "K" ) detailing the response Defendant Whaley had written on the face of the letter Plaintiff had written to Defendant Whaley on February 17, 2005, because he believed Plaintiff would not be able to read Defendant Whaley's handwriting. Defendant Whaley wrote as follows:

"The information to why this is was faxed to Mr. Hayes 2/2/05."
"You burned their house then murdered the female---"
"Your fixation is a matter of record---"
"Terrorizing then killing."
"The crimes are related just do not happen at the same time" ( See Plaintiff's Exhibit "H" ).

After reading the response of Defendant Whaley, on March 2, 2005, Plaintiff wrote to Defendant Hayes ( See Plaintiff's Exhibit "L" ) requesting a copy of the PSI because it obviously has false information in the report.

On March 5, 2005, Plaintiff wrote to Defendant Whaley ( See Plaintiff's Exhibit "M" ) explaining that the Arson charge and Murder charge against him were not related and that he did not meet the criteria for "R" status. Also, that this Murder was a Domestic case and that the victim had previously shot Plaintiff.

On March 17, 2005, Plaintiff wrote to Defendant Hayes once again requesting a copy of the PSI report ( See Plaintiff's Exhibit "N" ).

On March 22, 2005, Defendant Hayes wrote to Plaintiff advising him that he would not provide a copy of the PSI. Also, that Plaintiff would have to obtain it from the parole board or

obtain a court order to obtain a copy ( See Plaintiff's Exhibit "O" ).

On March 23, 2005, Plaintiff wrote to Defendant Hayes once again advising him that his complaints were not against the parole board and that there had to be false information in the PSI which placed him in "R" status. Also, that there was no rule against an inmate obtaining a copy of his PSI and that he wanted a copy of the PSI to correct the false information contained within it ( See Plaintiff's Exhibit "P" ).

On April 14, 2005, Plaintiff was called to the Institutional Segregation Review Board for his annual progress review. On the progress review form, Defendant Hayes wrote that Plaintiff had "stalked" the victim in his case....after months of telling Plaintiff that he did not know why he had been placed in "R" status. Plaintiff has not received a copy of this annual progress review form yet; but when he does, he will submit it to this Honorable Court.

Plaintiff plead guilty to the charges against him so there was no trial transcript. This means that Plaintiff's classification by the Defendants is based upon facts within the PSI report. Plaintiff was not "stalking the victim" nor was there "terrorizing then killing." This was a domestic case, and the victim was Plaintiff's girlfriend of 12 years.

Plaintiff has a right to a transfer to a work camp or a work release; and he does have a right to not be classified on false information contained in a PSI report. He also has the right to have this false information removed from his prison files.