IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION

RECEIVED

2005 AUG 10 A 9:43

|  |  |  |
|---|---|---|
| LORENZO WATKINS, #209854R, | ) ) ) ) ) | |
| Plaintiff, | ) ) ) ) ) | |
| VS. | ) ) ) ) ) | Civil Action No. 2:05-CV-462-F |
| PAUL WHALEY, Director of Classification; and JIM HAYES, Classification Supervisor, | ) ) ) ) ) ) | |
| Defendants. | ) ) ) ) | |

<u>Plaintiff's Response To Defendants' Special</u>

<u>Report And Supplemental Special Report</u>

Comes now Lorenzo Watkins #209854R, Plaintiff in the above-styled cause, and he respectfully submits the following response to the Defendants' Special Report and Supplemental Special Report:

1. The Defendants allege that Plaintiff has a history of burning

-1-

his victim's house, slashing her tires, and threatening her person prior to her murder which amounts to a terroristic homicide which requires the "R" restricted status and bars him not only from work release but also from a work camp. Defendant Whaley even goes as far in his affidavit (Defendants' Exhibit 3) to state that Plaintiff stalked the victim…who was Plaintiff's girlfriend.

In support of these allegations, the Defendants' submit the PSI Report (Defendants' Exhibit 4) wherein there are <u>hearsay</u> statements by a witness at the scene that Plaintiff had sent a threatening message to the victim and that the victim had stated to this witness that Plaintiff had cut all four of her tires. The Defendants have now served a copy of the PSI Report and other Defendant Exhibits on Plaintiff…but they have not submitted or served any investigative reports or criminal charges to substantiate these hearsay statements. Plaintiff, however, has already submitted the police report (See Plaintiff's Exhibit "C") that contains the hearsay statements later incorporated into the PSI. This is the initial police report where all statements are written down in the report whether they are true, false, or accurate. The next stage would be to investigate these statements and allegations; but an

investigation was never conducted; and because of this, these accusations should not have been placed in the PSI Report or used by the Defendants to classify Plaintiff into "R" restricted status. See for instance: U.S. v. Graham, 83 F. 3d 1466 (D.C. Cir. 1996); U.S. v. Butler, 41 F. 3d 1435 (11th Cir. 1995); U.S. Bartholomew, 974 F. 2d 39 (5th Cir. 1992); and Monroe v. Thigpen, 932 F. 2d 1437 (11th Cir. 1991).

2.      It is clear from Plaintiff's affidavit (See Plaintiff's Exhibit "Q") and the affidavit of retired Master Sergeant Artis L. Parrish (See Plaintiff's Exhibit "R") that Plaintiff never stalked or terrorized the victim (Plaintiff's girlfriend) and that Plaintiff was the one afraid of her because she had shot him twice.

3.      Defendant Whaley states in his affidavit (Defendants' Exhibit 3) that Plaintiff claims he has a right to work release and work camps when in fact Plaintiff stated he had <u>no</u> right to either...but did have a right to not be classified on false information in a PSI Report.

4.      There is a current  policy, not a law, that inmates with a murder conviction cannot go to work release; but they can go to a work camp in minimum custody if they are not in "R" status (See Plaintiff's Exhibit "Q").

5.   Defendant Whaley states in his affidavit (Defendants' Exhibit 3) that Plaintiff must remain in protective custody for his safety because he is a former correctional officer even if he was not in "R" status. This is not true. The Defendants have been transferring former police officers and correctional officers from protective custody to work release and work camps for the past 20 years (See Plaintiff's Exhibit "Q").

6.   When Plaintiff was given his annual classification progress review on 4-17-03, there is no mention that he committed any act that would place him in "R" status or restrict him from transferring to a work camp (See Plaintiff's Exhibit "S").

7.   When Plaintiff was given his annual classification progress review on 4-23-04, there is no mention that he committed any act that would place him in "R" status or restrict him from transferring to a work camp (See Plaintiff's Exhibit "T").

8.   When, however, Plaintiff became eligible for minimum custody and a transfer to a work camp, and was given his annual classification progress review on 4-14-05, for the first time, the "R" appeared after his AIS number (#209854R) and it specifically states that Plaintiff

-4-

"stalked" the victim which would place him in restrictive ("R") status. This was the first time that Plaintiff had heard these accusations; and when he questioned this classification, the Warden wrote on the bottom of the form that Plaintiff was "argumentative" and "Bad attitude" (See Plaintiff's Exhibit "U").

Plaintiff respectfully submits that the Defendants have placed him in "R" restricted custody status based upon unproven and investigated facts in a PSI report in violation of his constitutional rights.

Date: August 6, 2005                    Respectfully submitted,

*Lorenzo Watkins*
Lorenzo Watkins #209854
Dorm 9-A-19
Limestone Correc. Facility
28779 Nick Davis Road
Harvest, Alabama 35749

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing response on the Defendants attorney: Honorable Andrew Hamilton Smith, Assistant Attorney General, at his office: Office of the Attorney General, 11 South Union Street, Montgomery, Alabama 36130 by placing a copy of the same, and exhibits, in the U.S. mail, postage prepaid, this date:

Done this the 6th day of August, 2005.

*Lorenzo Watkins*
Lorenzo Watkins #209854