IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION

| | |
|---|---|
| LORENZO WATKINS, #209854R, | ) ) ) ) ) |
| Plaintiff, | ) ) ) |
| VS. | ) Civil Action No. 2:05-CV-462-F ) ) |
| PAUL WHALEY, Director of Classification; and JIM HAYES, Classification Supervisor, | ) ) ) ) ) ) |
| Defendants. | ) ) ) ) |

AFFIDAVIT OF LORENZO WATKINS

Comes now Lorenzo Watkins #209854, who is over the age of twenty-one years and who is a resident citizen of the State of Alabama, and he makes the following sworn statement:

I did set Labertha Annie Gilmer Sander's, my girlfriend, couch

Page 1 of 4

Plaintiff's Exhibit "Q"

on fire after we argued about money and she threw my clothes and belongings into the yard. This does not mean, however, that I ever terrorized, threatened, or stalked Labertha and does not mean that the Arson charge has anything to do with the Murder charge that occurred nearly five (5) months later. I began dating Labertha in 1987, and we always had a volatile relationship. After we would fight and argue, however, we would always make up. Labertha was not afraid of me; and in fact, I was afraid of her because she shot me me in the back on July 7, 1991, and shot me once again on January 2, 1998. Labertha was extremely jealous and told me she would shoot me again if she ever thought I had been with another woman. From that point forward, I always carried a gun when I was around Labertha because I believed she would shoot me without warning or provocation. On September 9, 1999, Labertha saw my gun in my pocket and grabbed for it. We struggled over the gun and Labertha was shot twice in the process.

The Defendant Paul Whaley states in his affidavit that the victim, Labertha, stated that I slashed all 4 tires on her vehicle. Labertha made no such statement. This unfounded statement was made by someone who was at the scene when Labertha was shot. I never slashed Labertha's tires...nor is there any proof that I committed such an act.

If the Defendant Paul Whaley would have spent less time reciting

his credentials in his affidavit, and would have spent that time reading my complaint, he would not have said:

"Worse, on page 11, Watkins even avers a "right" to work release and work camps."

This is ridiculous! On page 11, I stated that <u>I had NO RIGHT to work release or a work camp</u>...but that I did have a right to not be classified on false information in a PSI report.

I have now reviewed the PSI report that the Defendants have used to place me in "R" status. There is no mention in this PSI that I stalked Labertha, the victim, and no mention that I ever terrorized her. A witness at the scene of the shooting told police that I had slashed Labertha's tires, and that was written in the police report...but never investigated or proven. There is nothing in this PSI report that would support a label by Defendant Whaley that I am a "societal predator" or that I ever terrorized or stalked Labertha.

Defendant Whaley and Defendant Hayes do not mention in their affidavits that Labertha, the victim, had shot me twice.

There is a current policy, not a law, that inmates with a murder case cannot go to work release; but they can go to a work camp in minimum custody.

Defendant Whaley states in his affidavit that I am a former correctional officer and that because of this I must remain in the protective custody unit for my safety even if I was not in "R"

status and that I would never be able to go to work release or a work camp. Yes, I am a former correctional officer; but for the past 20 years, the Defendants have been transferring former police officers and correctional officers in the protective custody unit at the Limestone Correctional Facility to work release and work camps, and still do so today.

I declare under penalty of perjury that the above and foregoing is true and correct.

Date: Aug. 2, 05

Lorenzo Watkins
Lorenzo Watkins #209854

SWORN TO AND SUBSCRIBED before me on this the 2 day of August, 2005.
My Commission expires: 23 April 2008

Notary